**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **JACOB A. HIMBERGER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UBISOFT ENTERTAINMENT SA and UBISOFT, INC.,**<br><br>**Defendants.** | **Case No. 25-2505-DDC-JBW** |

**MEMORANDUM AND ORDER**

Plaintiff Jacob Himberger purchased a video game from defendants Ubisoft Entertainment SA and Ubisoft, Inc. Plaintiff alleges that, one month later, defendants shut down all services for the game, making it unusable. Plaintiff sued defendants in Kansas state court, alleging they had violated the Kansas Consumer Protection Act (KCPA) by falsely advertising ownership of the game when they sold only a limited license. Defendants removed the case to this court invoking diversity jurisdiction. This matter is before the court on plaintiff's Motion to Abstain or in the Alternative Remand in Whole or Part (Doc. 10). The court denies plaintiff's motion. It explains this result, below, starting with the pertinent factual background followed by the request for abstention and, finally, the request for remand.

## I. Background

The following facts come from the Petition[1] (Doc. 1–1) and the documents defendants attached to their Notice of Removal (Doc. 1). *See Doe v. Integris Health, Inc.*, 123 F.4th 1189, 1191 n.1 (10th Cir. 2024) ("'When courts review a notice of removal for jurisdiction, they may consider the complaint as well as documents attached to the notice of removal.'" (quoting *Bd. of Cnty. Comm'rs. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1247 n.1 (10th Cir. 2022))).

Defendant Ubisoft Entertainment SA is a foreign corporation with its principal place of business in France. Doc. 1–1 at 1 (Pet. ¶ 2). Defendant Ubisoft, Inc. is a California corporation with its principal place of business in California. *Id.*; Doc. 1–2 at 1. Plaintiff is a citizen of Kansas. Doc. 1–1 (Pet. ¶ 1). Plaintiff purchased a video game called "Skull and Bones" from defendants. Doc. 1–1 at 5 (Pet. ¶ 25). In a nutshell, plaintiff's suit alleges that defendants advertised that they were selling ownership of the game, when they were only selling a limited license—thus engaging in false, deceptive, and misleading advertising. *Id.* at 10 (Pet. ¶ 54).

The Petition brings claims under the KCPA, asserting the following claims for damages:

- Up to $10,000 for the consumer transaction when plaintiff purchased "Skull and Bones" from defendants;
- Up to $10,000 per day for a minimum of 1,095 days for each day of ongoing violations;
- Up to $10,000 for each consumer transaction where a third-party purchased "Skull and Bones" from defendants;

---

[1] "In Kansas state courts, the initial pleading is called a petition, not a complaint." *Country Carpet, Inc. v. Kan. Bldg. Trades Open End Health & Welfare Tr. Fund, Trs.*, 750 F. Supp. 3d 1244, 1250 n.1 (D. Kan. 2024).

- Up to $10,000 for misleading statements Ubisoft, Inc.'s CEO made about "Skull and Bones" on February 8, 2024;
- Up to $10,000 for each allegedly unconscionable requirement defendants imposed on consumers;
- Up to $10,000 for other practices violating the KCPA; and
- Up to $10,000 for violations against a protected consumer under Kan. Stat. Ann. § 50-677.

*Id.* at 24–25 (Pet.). Plaintiff also asks the court to issue a declaratory judgment that defendants violated the KCPA. *Id.* at 23 (Pet.). And plaintiff seeks an injunction preventing defendants from engaging in deceptive advertising practices and revoking customers' game licenses. *Id.* at 25 (Pet.). Finally, plaintiff requests attorneys' fees under Kan. Stat. Ann. § 50-634(e). *Id.* (Pet.).

Plaintiff filed this case in Douglas County, Kansas state court. *Id.* at 1 (Pet.). Defendants then removed the case to our court asserting diversity jurisdiction. Doc. 1 (Notice of Removal). Plaintiff doesn't challenge the diversity of plaintiff and defendants, nor does he appear to controvert the amount in controversy requirement. Instead, plaintiff argues that the court should abstain from exercising its jurisdiction under the *Burford* and *Thibodaux* abstention doctrines. Doc. 10. In the alternative, plaintiff argues for remand because of alleged procedural shortcomings in defendants' Notice of Removal. *Id.*

## II. Abstention

"'Abstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Federal courts have a "'"virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting *Colo.*

*River*, 424 U.S. at 817). But that obligation "is not absolute." *Id.* The Supreme Court has "carefully defined" the instances where abstention is appropriate. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989) [hereinafter *NOPSI*].

Plaintiff invokes two abstention doctrines here—*Thibodaux* and *Burford*—and asks the court to refuse to exercise its jurisdiction. Doc. 10 at 1–10. Plaintiff's case doesn't present circumstances that justify abstention under either doctrine. The court explains why, below.

**A. Thibodaux Abstention**

Plaintiff urges the court to abstain under *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959). *Thibodaux* abstention is appropriate when a case presents unresolved questions of state law that are "intimately involved" with a state's "sovereign prerogative." *Id.* at 28; *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717 (1996) (identifying federal courts' "power to refrain from hearing cases . . . intimately involved with the States' sovereign prerogative, the proper adjudication of which might be impaired by unsettled questions of state law" (quotation cleaned up)). "Classic examples include the extent of a local government's eminent domain power and 'the apportionment of governmental powers between City and State.'" *Fire-Dex, LLC v. Admiral Ins. Co.*, 139 F.4th 519, 533 (6th Cir. 2025) (quoting *Thibodaux*, 360 U.S. at 28). The purpose of *Thibodaux* abstention is to prevent "the hazards of serious disruption by federal courts of state government or needless friction between state and federal authorities[.]" *Thibodaux,* 360 U.S. at 28.

Here, plaintiff argues that there are two "difficult and unsettled questions" of state law implicating "substantial public policy concerns" and justifying *Thibodaux* abstention. Doc. 10 at 2, 3. Neither of plaintiff's issues satisfy the doctrine's stringent requirements. The court addresses each issue, below.

Plaintiff asserts that whether defendants' use of online digital advertising practices constitutes solicitation under the KCPA is a difficult and unsettled issue of Kansas law. *Id*. at 3. But this question does not present an unsettled legal mystery. The KCPA explicitly instructs courts to construe its provisions liberally to protect consumers. Kan. Stat. Ann. § 50-623. And it outlaws continuing deceptive acts or practices that don't involve an immediate exchange of value—such as a supplier's deceptive advertising campaign. *Id.* § 50-636(d); *see also Martinez v. Hobbs Mech., Inc.*, 492 P.3d 506, 2021 WL 3439219, at *5 (Kan. Ct. App. 2021). Thus, online digital advertising campaigns fit squarely within the established, harmonious framework of pre-transaction "solicitation" already recognized by Kansas state courts.

Even if this issue presented a difficult and unsettled question of state law, it does not touch upon a "sovereign prerogative" such as eminent domain. To be sure, the state has an interest in protecting its consumers. But a KCPA claim is a standard statutory consumer protection action. As this court has recognized, "federal courts have determined the scope of coverage for other terms" in the KCPA. *Alexander v. Certified Master Builder Corp.*, No. CIV. A. 96-2515-GTV, 1997 WL 298448, at *3 (D. Kan. May 27, 1997); *see also Wayman v. Amoco Oil Co.,* 923 F. Supp. 1322, 1364 (D. Kan. 1996) (defining scope of the term "business purposes" under Kan. Stat. Ann. § 50–624(b)). In sum, resolving whether online digital ads constitute a solicitation under the KCPA is a matter of basic statutory interpretation and does not risk the broad, systemic disruption of state sovereignty required to justify *Thibodaux* abstention.

Next, plaintiff also asserts that whether private consumers are entitled to statutory penalties for KCPA violations in connection with third-party consumer transactions is a difficult and unsettled issue of Kansas law. Doc. 10 at 4. Plaintiff asserts that no court ever has

interpreted the KCPA in this context.[2] Even if this question is one of first impression, plaintiff hasn't shown that the court is unable to interpret the KCPA in this context without affecting important Kansas policies. Federal courts routinely adjudicate the boundaries of who qualifies as an "aggrieved" consumer under the KCPA. *See Arensdorf*, 543 F. Supp. 3d at 1076. Plaintiff hasn't shown why doing so here would disrupt state policies.

Plaintiff also fails to show how this issue is so special in nature that it is intimately involved with Kansas' sovereign prerogative. *See Thibodaux*, 360 U.S. at 29 (holding that the "special nature of eminent domain" justifies abstention). Unlike the eminent domain issues presented by *Thibodaux*, whether the KCPA permits recovery of statutory penalties for third-party transactions doesn't implicate a state's exercise of a sovereign governmental power. This case doesn't present unclear and important issues of state law bearing on sovereign prerogative. So, the court denies plaintiff's motion to abstain based on the *Thibodaux* doctrine.

**B. Burford Abstention**

Plaintiff also urges the court to abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The *Burford* abstention doctrine provides that:

> "where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

[2] To be fair, "it appears no Kansas Supreme Court decision has ever considered the viability of a third-party beneficiary claim under the KCPA[.]" *Hills v. Arensdorf*, 543 F. Supp. 3d 1065, 1076 (D. Kan. 2021).

*Western Ins. Co. v. A. & H. Ins., Inc.*, 784 F.3d 725, 727 (10th Cir. 2015) (quoting *NOPSI*, 491 U.S. at 361 (quotation cleaned up)).

The purpose of *Burford* abstention is to protect "state administrative processes from undue federal interference[.]" *NOPSI*, 491 U.S. at 362. *Burford* abstention is appropriate when a case involves a "complex regulatory scheme of paramount local concern and a matter which demands local administrative expertise[.]" *Id.* (quotation cleaned up). But *Burford* "does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *Id.* (quoting *Colo. River*, 424 U.S. at 815–16).

As a threshold matter, defendants argue that *Burford* abstention is not available in cases seeking damages. Doc. 15 at 5. Outright dismissal or remand isn't appropriate in cases seeking damages as relief. *Quackenbush*, 517 U.S. at 731. "[F]ederal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." *Id.* But under *Burford*, district courts may stay "adjudication of a damages action pending the resolution by the state courts of a disputed question of state law." *Id.* at 730–31. Put another way, *Burford* abstention may apply in a case seeking damages where the doctrine defers—but doesn't eliminate—possible federal court adjudication.

Here, plaintiff seeks both damages and equitable relief. Doc. 1–1 at 23–25 (Pet.) (seeking a declaratory judgment, actual or statutory damages, and an injunction). Under *Quackenbush*, the *Burford* doctrine permits a stay of these proceedings pending resolution of a disputed question of Kansas state law. But as addressed above, this case doesn't present a difficult and unsettled question of state law.

Plaintiff also hasn't shown how adjudication of this case in a federal forum would disrupt state efforts to establish a coherent policy in a matter of substantial public concern. Plaintiff asserts that the exercise of federal review would disrupt state efforts to establish a coherent policy for protecting Kansas consumers. Doc. 10 at 10. It's evident that Kansas law views consumer protection as a matter of public concern. *See Hays v. Ruther*, 313 P.3d 782, 788 (Kan. 2013) ("The purpose of the consumer protection laws in Kansas is protection of the public."). The court also recognizes that protection of Kansas consumers is currently subject to an existing statutory scheme. But in lieu of creating a specialized administrative enforcement scheme, the KCPA authorizes enforcement through private civil actions brought by aggrieved consumers and suits brought by the Attorney General. Kan. Stat. Ann. §§ 50-633, 50-634; *see also Alenco, Inc. v. Warrington*, 560 P.3d 586, 599 (Kan. Ct. App. 2024) ("[T]he Act empowers the Kansas Attorney General to prosecute prohibited practices and establishes a private claim for consumers who have been subjected to a supplier's deceptive or unconscionable actions."). As such, federal adjudication of plaintiff's KCPA claims doesn't threaten to disrupt a "complex state administrative process" nor does it trigger the need to protect "from undue federal interference[.]" *NOPSI*, 491 U.S. at 362.

Finally, abstention isn't required merely because a federal ruling might conflict with state regulatory policy. *Id*. Here, plaintiff's primary claim asserts that the KCPA allows him to recover civil penalties on behalf of third parties for defendants' allegedly deceptive advertising practices. "Unlike a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors, federal adjudication" of this sort of statutory interpretation claim "would not disrupt the State's attempt to ensure uniformity in the treatment of an essentially local problem[.]" *Id.* (quotation cleaned up). For these reasons,

*Burford* abstention is inappropriate here. And so, the court denies plaintiff's motion to the extent it asks the court to abstain under either doctrine plaintiff invokes. The court addresses plaintiff's other request for relief—remand—next.

**III. Procedural Remand**

Defendants removed this case to federal court, asserting that diversity jurisdiction exists under 28 U.S.C. § 1332, because: (1) the parties are diverse, and (2) the amount in controversy exceeds $75,000. Doc. 1 at 2. Plaintiff never disputes the first proposition. And the court finds that defendants have asserted diversity facts sufficiently. Doc. 10 at 10. But plaintiff asserts defendants failed to meet the second requirement because of four procedural errors in the Notice of Removal. *Id.* at 11–12.

The defendant in a civil, state-court action may remove a case to federal district court when the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over cases in diversity, that is, cases (1) between citizens of different states in which (2) the amount in controversy, excluding interest and costs, exceeds $75,000. *Id.* § 1332(a). But a federal court must remand the case to state court if it lacks subject matter jurisdiction. *Id.* § 1447(c). "The removing party has the burden to demonstrate the appropriateness of removal from state to federal court." *Baby C v. Price*, 138 F. App'x 81, 83 (10th Cir. 2005).

A removal notice asserting diversity jurisdiction must allege plausibly that the amount-in-controversy requirement is met. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). The standard for a defendant's "short and plain statement of the grounds for removal" under § 1446(a) isn't any higher than the standard for a "short and plain statement" under Rule 8(a)(2), which sets out the pleading standard. *See id.* at 87. By using the same

language, Congress "intended . . . to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'" *Id.* (brackets in original) (quoting H.R.Rep. No. 100-889, p. 71 (1988)). "Although courts sometimes have said that the requirements of the jurisdictional statement are strict, and that a 'mere conclusion' is insufficient, the better rule is that detailed grounds for removal need not be set forth in the notice." 14C *Wright & Miller's Federal Practice and Procedure* § 3733 (4th ed. 2026) (footnotes omitted). So, "a defendant's notice of removal needs to include only a plausible allegation that the amount in controversy exceeds the jurisdictional minimum; it does not need to describe or provide evidence of the amount in controversy." *Id.* (citing *Dart*, 574 U.S. 81). When "a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart*, 574 U.S. at 87.

But when the amount in controversy is disputed, the burden of the removing party sharpens. Section "1446(c)(2)(B) instructs: Removal is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 88 (quotation cleaned up). "To satisfy the preponderance standard, a party must show a reasonable probability that the [amount in] controversy exceeds" $75,000. *Owens v. Dart Cherokee Basin Operating Co.*, No. 12-4157-JAR-JPO, 2015 WL 7853939, at *3 (D. Kan. Dec. 3, 2015) (quotation cleaned up). Putting it another way, the defendant must demonstrate the possibility that an amount beyond the jurisdictional minimum is "in play." *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008); *see also Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 912 (10th Cir. 2016) ("[A] party seeking federal jurisdiction [must] show . . . that a fact finder might legally conclude that damages exceed the statutory amount." (quotation cleaned up)). Plaintiff

here contends that defendants missed the boat on the amount-in-controversy requirement in four distinct ways.

*First*, plaintiff argues that defendants failed to address the clear and separate claims in plaintiff's petition. Doc. 10 at 12. Specifically, defendants failed to address plaintiff's solicitation claims as individual claims per act or practice and failed to distinguish his solicitation claims from his other claims. *Id.* at 14–15. But neither § 1441 nor § 1446 requires a removing defendant to address every claim asserted in the plaintiff's petition separately. Plaintiff cites no authority imposing such a requirement.

Under § 1446, a removing defendant must file a notice of removal containing a "short and plain statement of the grounds for removal[.]" 28 U.S.C. § 1446(a). The "short and plain" statement "need not contain evidentiary submissions" supporting the amount in controversy. *Dart*, 574 U.S. at 84. Instead, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. And where "the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum . . . is deemed to be the amount in controversy." *Id.* at 84 (quotation cleaned up).

Here, defendants' notice of removal asserts that plaintiff seeks statutory damages of up to $10,000 per day for a minimum of 1,095 days—a total of $10,950,000. Doc 1 at 2. This request for statutory damages comes straight from plaintiff's Petition. Doc. 1-1 at 24 (Pet.). Defendants plausibly have alleged that the amount in controversy exceeds $75,000. And that's all § 1446(a) requires. Defendants' notice of removal isn't deficient on this score.

*Second*, plaintiff asserts that defendants' removal is improper because they failed to address whether they are jointly liable before aggregating claims for the amount in controversy.

Doc. 10 at 12. Plaintiff asserts that because defendants' removal doesn't address joint liability, defendants didn't meet their burden to establish that they could aggregate claims.

Where "a single plaintiff has multiple claims against . . . two or more defendants jointly, and the claims are of such character that they may properly be joined in one suit, the aggregate amount" of the claims is the amount in controversy. *Alberty v. W. Sur. Co.*, 249 F.2d 537, 538 (10th Cir. 1957). Once the amount in controversy requirement is satisfied for one defendant, the court may exercise supplemental jurisdiction over claims against other defendants that form part of the same case or controversy. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005).

Here, defendants' failure to assert joint liability in the notice of removal does not make removal improper. Plaintiff's petition alleges both defendants acted as "suppliers" under the KCPA and "prays for judgement" against defendants collectively. Doc. 1–1 at 2, 23 (Pet. ¶ 4, "Wherefore"). Among other things, plaintiff seeks damages of at least $10,950,000, well above the jurisdictional threshold. *Id.* at 24 (Pet.). Because plaintiff's petition seeks a single judgment against defendants on KCPA claims properly joined in one action, defendants have plausibly alleged that the amount of that recovery constitutes the amount in controversy.

Also, plaintiff's claims against defendants arise from the same alleged conduct and form part of the same case or controversy. Plaintiff alleges that defendants violated the KCPA by their advertising and sale of "Skull and Bones," asserting multiple claims based on the same underlying practices. Even if the amount in controversy requirement is satisfied for just one defendant, the court may exercise supplemental jurisdiction over plaintiff's claims against the remaining defendant because those claims form part of the same case or controversy. *Exxon*,

545 U.S. at 559. So, defendants' notice of removal is not deficient for failing to assert joint liability expressly.

*Third*, plaintiff asserts that defendants' removal failed to state the filing is aggregating claims for the amount in controversy. Doc. 10 at 12. Plaintiff misunderstands the requirements for removal. In determining the amount in controversy, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). When assessing whether plaintiff has alleged the amount in controversy, the court counts all of plaintiff's alleged damages. *See Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003). To establish the amount in controversy, the removing defendants may rely on a reasonable estimate of the potential damages based on the "facts and theories of recovery" alleged in the complaint. *McPhail*, 529 F.3d at 955.

Here, plaintiff's petition alleges at least 1,095 violations and requests $10,000 for each violation. Doc. 1–1 at 24 (Pet.). That's a total recovery of more than $10 million. On its face, plaintiff's petition places far more than the $75,000 diversity threshold in controversy. Defendants weren't required to characterize that calculation as an "aggregation" of claims. Instead, they permissibly relied on plaintiff's own allegations and prayer for relief to allege that the amount in controversy exceeds the jurisdictional threshold. *McPhail*, 529 F.3d at 955 ("[T]he defendant may rely on an estimate of the potential damages from the allegations in the complaint. A complaint that presents *a combination* of facts and theories of recovery that may support a claim in excess of $75,000 can support removal." (emphasis added) (citation omitted)). So, defendants' notice of removal is not deficient for neglecting to state it's aggregating claims.

*Last*, plaintiff contends that defendants' removal failed to address the separate claims that require consideration under supplemental jurisdiction. Doc. 10 at 12. Nothing in § 1446 requires a removing defendant to identify each claim over which the court ultimately may exercise supplemental jurisdiction. *See* 28 U.S.C. § 1446; *see also Aldrich v. Univ. of Phx., Inc.*, 661 F. App'x 384, 388 (6th Cir. 2016) ("[A] party presenting a case in federal court does not need to plead the supplemental jurisdiction statute. . . . Plaintiffs' argument that the notice of removal was deficient due to its lack of an explicit reference to supplemental jurisdiction is accordingly unfounded."). Instead, "once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." *Exxon*, 545 U.S. at 552.

Here, plaintiff hasn't identified which claims require the court to exercise supplemental jurisdiction. Regardless, all plaintiff's claims derive from defendants' same allegedly deceptive advertising practices for "Skull and Bones." They are, therefore, part of the same case or controversy. To the extent that it is necessary, the court may exercise supplemental jurisdiction over plaintiff's related claims. So, defendants' Notice of Removal is not deficient for failing to address the separate claims that may require supplemental jurisdiction.

## IV. Conclusion

The court finds abstention isn't appropriate under both the *Thibodaux* and *Burford* doctrines. The court also finds that none of the purported notice-of-removal errors divest this court of subject matter jurisdiction. So, the court denies plaintiff's Motion to Abstain or in the Alternative Remand (Doc. 10).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Abstain or in the Alternative Remand in Whole or Part (Doc. 10) is denied.

**IT IS SO ORDERED.**

**Dated this 26th day of August, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree______**
**Daniel D. Crabtree**
**United States District Judge**