**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **JACOB A. HIMBERGER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UBISOFT ENTERTAINMENT SA and UBISOFT, INC.,**<br><br>**Defendants.** | **Case No. 25-2505-DDC-JBW** |

**MEMORANDUM AND ORDER**

This case asks the court to decide whether defendants Ubisoft Entertainment SA and Ubisoft, Inc. advertised their video game—"Skull and Bones"—in a manner that violated the Kansas Consumer Protection Act (KCPA). But, before the court reaches any merits, it must ensure that this case is pending before the proper court. Defendants assert that a contractual forum-selection clause requires another court to decide this case. So, this Order begins with defendants' Motion to Transfer or, alternatively, Motion to Dismiss for Failure to State a Claim (Doc. 11). Also ready for the court's consideration is plaintiff Jacob Himberger's Motion for Leave to File a Sur-reply (Doc. 22) and request for sanctions. For the reasons stated below, the court grants defendants' transfer request. Because the court concludes that transfer is appropriate, it doesn't reach defendants' alternative request for relief—dismissal. Finally, the court denies plaintiff's sur-reply and sanctions motions, for reasons explained near the end of this Order.

## I. Background

Plaintiff purchased "Skull and Bones," a video game developed by defendants, in February 2024. Doc. 1-1 at 5 (Pet. ¶¶ 25–26). Plaintiff alleges that defendants advertised that they were selling ownership of "Skull and Bones" when they were only selling a limited license. *Id.* at 6–7 (Pet. ¶¶ 34–37). Defendants thus engaged in false, deceptive, misleading, or unconscionable advertising practices under the KCPA, plaintiff asserts. *Id.* at 7, 10 (Pet. ¶¶ 38, 54–55). Plaintiff originally filed this case in Kansas state court. *Id.* at 1. Defendants removed it here, invoking diversity jurisdiction. Doc. 1 (Notice of Removal).

Defendants now move to transfer under 28 U.S.C. § 1404(a), invoking two forum-selection clauses contained in Ubisoft's Terms of Use and End User Licensing Agreement (EULA). Doc. 11 at 1. Plaintiff, for his part, seeks leave to file a sur-reply to defendants' transfer-or-dismissal motion. Doc. 22. And in his sur-reply briefing, plaintiff also seeks Rule 11 sanctions for defendants' alleged misrepresentations of law. Doc. 24 at 4–5. The court takes up all three requests, starting with the transfer motion.

## II. Motion to Transfer

Defendants seek an order transferring this case to the United States District Court for the Central District of California under 28 U.S.C. § 1404(a). Doc. 11 at 1. They assert that plaintiff has agreed to the Ubisoft Terms of Use and EULA, both of which contain mandatory forum selection clauses. Doc. 12 at 1. Defendants cite the forum-selection clause in the 2020 Terms of Use.[1] This clause reads:

---

[1] The court properly may consider documents attached to a motion to transfer. *See Wyldewood Cellars, Inc. v. Torro, LLC*, 2023 WL 3750582, at *1 n.1 (D. Kan. June 1, 2023). Indeed, where a "valid forum selection clause may prohibit a federal court from exercising jurisdiction," the court employs the same "wide discretion to allow" such attachments as permitted when deciding other jurisdictional disputes. *Id.* (quotation cleaned up). Our Circuit has determined—in the context of deciding a Rule 12(b)(1) facial attack on jurisdiction—that "a district court has wide discretion to allow affidavits, other

> For any dispute that is equal to or more than $10,000 and is not resolved or arbitrated under these Terms, it is hereby agreed that any action at law or in equity arising under these Terms and/or your use of our Services shall be finally adjudicated or determined in any court or courts in the State of California, or of the United States of America, in Los Angeles County, California and the parties hereto hereby submit generally and unconditionally to the personal and exclusive jurisdiction and venue of these courts in respect to any such matter[.]

Doc. 12-1 at 16 (TOU § 11.2). Defendants also attach a declaration from the General Manager of the Customer Relationship Centre for Ubisoft Entertainment Group, Damien Glorieux. In that declaration, Mr. Glorieux attests that plaintiff affirmatively agreed to the 2020 Terms of Use on July 26, 2020, as confirmed by a screen capture of Ubisoft's records. *Id.* at 2 (Glorieux Decl. ¶¶ 8–9); *id.* at 4 (Def. Ex. B).

Plaintiff's Response opposes transfer for three reasons: (1) the Terms of Use and EULA are invalid and void "due to their indefinite and overreaching nature as adhesion contracts[;]" (2) defendants fail to assert or prove that plaintiff agreed to the Terms of Use or EULA for his purchase of "Skull and Bones;" and (3) the forum selection clauses are not enforceable under the KCPA and federal law generally. Doc 17 at 6. The court starts with the legal standard governing transfer.

### A. Legal Standard

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action . . . to any district or division to which all parties have consented." The typical § 1404(a) analysis requires courts to consider multiple factors in "an individualized, case-by-case consideration of

---

documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (quotation cleaned up). And the court needn't convert the 12(b)(1) motion into a summary judgment motion "unless resolution of the jurisdictional question is intertwined with the merits." *Id.*

Here, the jurisdictional question isn't intertwined with the merits of this case. So, the court can consider documents outside the pleadings.

convenience and fairness." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quotation cleaned up). But that analysis streamlines when a valid forum-selection clause is in play. "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013) (footnote omitted). The upshot of such a streamlined analysis and presumption of transfer is that "a district court may consider arguments about public-interest factors only." *Id.* at 64. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* That is, "forum selection clauses are 'prima facie valid and should be enforced' unless shown to be unreasonable." *New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 430 F. Supp. 3d 900, 922 (D.N.M. 2019) (quoting *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1344 (10th Cir. 1992)). Indeed, our Circuit "will enforce a mandatory forum selection clause unless the party challenging it clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) (quotation cleaned up).

Federal law governs the enforceability question of a forum-selection clause. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32, (1988) ("[F]ederal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer [a] case[.]"); *K.R.W. Constr., Inc. v. Stronghold Eng'g Inc.*, 598 F. Supp. 3d 1129, 1135 (D. Kan. 2022) ("[E]ven when a choice-of-law clause provides that a particular state's substantive law governs the parties' agreement, federal procedural law

generally governs the application of clauses designating a place of jurisdiction or venue under motions to dismiss, transfer, or remand." (quotation cleaned up)).

## III. Analysis

The court's work here unfolds in this fashion: As a threshold matter, the court concludes that the parties have agreed to the forum-selection clause in the 2020 Terms of Use. Then, the court explains why plaintiff has failed to overcome the presumptive validity of that forum-selection clause. Last, plaintiff fails to persuade the court that the public-interest factors overwhelmingly disfavor a transfer. So, the court grants defendants' transfer motion.[2]

### A. Plaintiff's Assent to the Forum Selection Clause

The court determines, based on the record currently before it, that plaintiff agreed to the 2020 Terms of Use containing the forum-selection clause.[3] Defendants' evidence, which plaintiff has failed to rebut, supports this conclusion.

Ubisoft requires an account to access the game at issue in this litigation—Skull and Bones. Doc. 12-1 at 1 (Glorieux Decl. ¶ 4). And such an account requires a user affirmatively to agree to Ubisoft's Terms of Use. *Id.* at 2 (Glorieux Decl. ¶ 6). Plaintiff created a Ubisoft account in 2017. *Id.* at 1 (Glorieux Decl. ¶ 5); *id.* at 3 (Def. Ex. A) (internal records showing plaintiff created account on March 13, 2017). Ubisoft updated its Terms of Use in May 2020. *Id.* at 2 (Glorieux Decl. ¶ 7). After that update, plaintiff "affirmatively agreed to the updated

---

[2] Defendants requested oral argument on their transfer-and-dismissal motion. Doc. 11 at 1. Defendants had an opportunity to present their arguments in their papers—which the court finds sufficient. And oral argument isn't required. Our local rules clarify that whether to hear oral argument rests with the court's discretion. *See* D. Kan. Rule 7.2 ("The court *may* set any motion for oral argument or hearing at the request of a party or on its own initiative." (emphasis added)). The court, in its discretion, denies defendants' oral-argument request.

[3] Because the court concludes that plaintiff agreed to the Terms of Use, it needn't consider defendants' alternative argument about the EULA.

Terms of Use" on July 26, 2020. *Id.* at 2 (Glorieux Decl. ¶ 8). Defendants have submitted internal records that depict an "Action Log" for plaintiff's Ubisoft profile. *Id.* at 3–4. In that Action Log, an entry confirms that plaintiff accepted the Terms of Use on July 26, 2020, through the application "Assassin's Creed IV: Black Flag – Singleplayer[.]" *Id.* at 4 (Def. Ex. B).

For his part, plaintiff concedes that he created an account in 2017. Doc. 17 at 3. But plaintiff reports he doesn't know whether he ever agreed to the 2020 updated Terms. His motion explains that he "is not aware of the form of notice in which Defendants provided the 2020 Terms of Use, if at all[.]" *Id.* at 4. And he hypothesizes that "if Defendants ever presented these Terms to him, the Terms were likely in the form of a hyperlink without a requirement to read or open the Terms of Use." *Id.* Later in his papers, plaintiff expounds that he "does not know if the Terms he agreed to in July 2020 are accurately represented by the Terms of Use provided because to the best of his knowledge, he was never presented such Terms[.]" *Id.* at 13. In short, throughout his response to the motion, plaintiff asserts that he doesn't recall defendants ever presenting him with the Terms. He also argues that defendants didn't provide the Terms of Use with his purchase of "Skull and Bones" in 2024 and, instead, rely solely on a clause about future modifications from the 2020 Terms.

Plaintiff's lack of knowledge whether Ubisoft presented him with the 2020 Terms of Use is insufficient to overcome defendants' evidence. Plaintiff offers no evidence to counter defendants' exhibits—no sworn declaration of his own, for example. *See generally* Doc. 17. Plaintiff's bare assertion that he doesn't remember agreeing to the updated terms won't suffice. *See Campinha-Bacote v. AT & T Corp.*, 2017 WL 2817566, at *3 (Ohio Ct. App. June 29, 2017) (finding plaintiff had agreed to terms of service and rejecting plaintiff's "lack of knowledge or memory" as insufficient to overcome defendant's affidavit attesting that plaintiff "would not

have been able to register or access his services without accepting the terms of service during registration"). The only evidence currently before the court indicates that plaintiff both created an account in 2017 and agreed to the 2020 Terms of Use. Plaintiff's inability to recall agreeing to the Terms of Use is unavailing. On the current record, the court finds plaintiff agreed to the 2020 Terms of Use.

Plaintiff argues that he didn't "re-affirm[]" the Terms of Use when he purchased Skull and Bones in 2024. Doc. 17 at 12. Thus, he argues, those terms don't govern his claims. *Id.* at 12–15. The issue? The 2020 terms govern "[a]ll claims" "connected to" Ubisoft's services. Doc. 12-1 at 16 (TOU § 11). Plaintiff's claims—which allege that Ubisoft unlawfully distributed video games—plainly connect to defendants' services. Plaintiff can't escape the forum-selection clause just because he didn't reacknowledge it when he made a new purchase in 2024.

Plaintiff also tries another tack. He argues that the Terms of Use are "invalid and void *ab initio* due to their indefinite and overreaching nature as adhesion contracts." Doc. 17 at 6. The court addresses this argument, next.

### B. Validity of the Forum-Selection Clause

Recall that forum selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable." *Milk 'N' More*, 963 F.2d at 1346. A "party contesting that presumption bears a heavy burden of proof." *Health Grades, Inc. v. Hamot Med. Ctr.*, 2006 WL 8454634, at *2 (D. Colo. Feb. 27, 2006) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Recall also that our Circuit "will enforce a mandatory forum selection clause unless the party challenging it clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Niemi*, 770 F.3d at 1351 (quotation cleaned up).

Here, plaintiff argues for invalidity premised first on the nature of the contract as an adhesion contract. Doc. 17 at 6. Defendants contest that characterization. Doc. 21 at 3–4. They contend that the Terms of Use lack the hallmarks of an adhesion contract. *Id.* at 3. Plaintiff didn't agree to the Terms of Use under any untoward pressure—economic, temporal, or otherwise—defendants argue. *Id.* And because plaintiff has lots of options to purchase video games online, he needn't purchase them from defendants. *Id.* Plus, defendants contend, the product is a video game, not a critical good or service. *Id.* at 3–4.

But the court needn't decide the question of adhesion to resolve plaintiff's invalidity argument. Even if the Terms of Use qualified as an adhesion contract, that fact alone doesn't invalidate the forum-selection clause. Other courts to consider this question have held that the typical characteristics of an adhesion contract don't alter a forum-selection clause's enforceability:

> [U]nequal bargaining position and form contracts do not invalidate forum selection provisions. The fact that Plaintiff is an individual and the contract was presented to him as a form contract does not invalidate the forum selection provision, and Plaintiff's belief that he could not negotiate or change the terms of the Agreement does not rise to the level of overreaching that would make it unreasonable or unfair to enforce the forum selection provision.

*Montoya v. Fin. Fed. Credit, Inc.*, 872 F. Supp. 2d 1251, 1263 (D.N.M. 2012) (quotation cleaned up). Indeed, the Supreme Court has enforced a forum-selection provision contained in an adhesion contract—one attached to a cruise ticket. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991) ("[A] ticket of this kind will be a form contract the terms of which are not subject to negotiation, and that an individual purchasing the ticket will not have bargaining parity with the cruise line. . . . we do not adopt the Court of Appeals' determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply

because it is not the subject of bargaining."). So, even if the court were to conclude the Terms of Use qualified as an adhesion contract, invalidating the forum-selection clause needn't follow.

Plaintiff also levels a slew of other arguments at the Terms of Use, attempting to establish invalidity. Plaintiff contends that the 2020 agreement overreaches by "applying to all games released by Ubisoft." Doc. 17 at 6. He argues the all-games language is a material change from the earlier Terms of Use, which "applied only to online games and/or services." *Id.* at 9. He further suggests the Terms of Use overreaches by extending to games previously purchased. *Id.* at 11. Such overreach means that any game use requires an assent to the new terms, thus "bind[ing] gamers until death if consumers wish to maintain their purchases." *Id.* at 12. And he highlights several other problems with the contract as a whole: it takes advantage of child-customers through complex language; it's inconsistently applied to some entities, like GameStop; and the limited license has no expiration date, which plaintiff dubs a "material term to the contract[.]" *Id.* at 11–12. But these assertions are no more than generalized attacks. That is, plaintiff never attacks the forum-selection clause itself as being indefinite, overreaching, unconscionable, or otherwise invalid. Courts have refused to invalidate forum-selection clauses under such generalized attacks.

Consider, for example, our Circuit's treatment of an arbitration provision and forum-selection clause in an adhesion contract to employ international au pairs. *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1249 (10th Cir. 2018). There, the Circuit concluded that the au pair agreements had "moderate procedural unconscionability and significant substantive unconscionability[.]" *Id.* at 1262. But that unconscionability didn't pollute the forum-selection clause, which the Circuit evaluated separately. *Id.* at 1258–60. Because the Circuit found that the forum-selection clause itself was neither unconscionable nor a contributor to substantive

unconscionability, the Circuit reversed and remanded, instructing the district court to sever the unconscionable provision. *Id.* at 1262–63.

A recent opinion by the Utah federal court cites *Beltran* for the proposition that "the basis for the invalidity of [a forum-selection] clause must be alleged as to the clause specifically and not just to the contract generally[.]" *TD Srl v. Italia Granite Supply, LLC*, 2025 WL 3089091, at *3 (D. Utah Nov. 5, 2025). In *TD Srl*, the party resisting enforcement of the forum-selection clause—like plaintiff here—argued that the entirety of the contract was unconscionable. *Id.* The resisting party contended that the contract was procedurally unconscionable because the party had not received the terms; the terms were difficult to locate on the website; and the terms were non-negotiable, not allowing the resisting party to object. *Id.* at *4. The resisting party also advanced arguments of substantive unconscionability. But the court refused to impart any overall unconscionability to the forum-selection clause, finding an "argument at that level of generality . . . insufficient." *Id.* at *3. It held that, where the party hadn't "argue[d] that the forum selection clause itself was unconscionable," its unconscionability arguments failed to invalidate the forum-selection clause. *Id.* at *4. And the court transferred the case to the venue designated by the forum-selection clause. *Id.* at *5.

A similar evaluate-separately logic inheres in our Circuit's analysis of a forum-selection clause in *Niemi v. Lasshofer*. 770 F.3d at 1351–52. There, the Tenth Circuit had determined already that the agreement containing the forum-selection clause was "procured through fraud and employed in the service of a larger fraudulent scheme[.]" *Id.* at 1351. But it didn't consider such a determination sufficient to invalidate the agreement's mandatory forum-selection clause. *Id.* at 1351–52. Instead, the party resisting enforcement of the selection clause had to "'plead fraud going to the specific provision.'" *Id.* (quoting *Riley v. Kingsley Underwriting Agencies,*

*Ltd.*, 969 F.2d 953, 960 (10th Cir. 1992)). Only after the Circuit found "that the forum selection clause itself was fraudulently induced" did it affirm the district court's refusal to enforce the forum-selection clause. *Id.* at 1352.

To summarize, the law requires a party resisting a forum-selection clause to proffer more than generalized attacks attacking the agreement as a whole. Plaintiff's holistic arguments about the agreement's overreach don't threaten the validity of the selection clause. The court thus rejects plaintiff's generalized overreach arguments as insufficient to establish invalidity. And the court concludes the Terms of Use's forum-selection clause is valid. One final issue remains: whether federal law or the KCPA preclude enforcement of the forum-selection clause.

**C. Enforceability of the Forum-Selection Clause**

Finally, plaintiff seeks to avoid enforcement of the forum-selection clause. Doc. 17 at 15–19. Bear in mind that a court should deny a § 1404(a) transfer motion only "under extraordinary circumstances unrelated to the convenience of the parties[.]" *Atl. Marine Constr.*, 571 U.S. at 62. Thus, as the party seeking to avoid enforcement, plaintiff has the burden of showing that public-interest factors overwhelmingly disfavor a transfer. *Id*. "Relevant public interest factors are 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Tallgrass Talent Grp., LLC v. Advantage Sales & Mktg., LLC*, 2017 WL 4123304, at *3 (D. Kan. Sept. 18, 2017) (alteration in original) (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 62 n.6.).

As an initial matter, plaintiff spills much ink asking this court to remand to Kansas state courts. *See* Doc. 17 at 18–19. The court will address those arguments in a separate Order. Those arguments aside, plaintiff advances three public-interest assertions: (1) Kansas courts have far less litigation than California courts, *id.* at 16; (2) under the KCPA, consumers are

permitted to select their venue in actions against suppliers, *id.*; and (3) transferring the case to California thwarts plaintiff's statutory right to seek an injunction for the benefit of the general public in Kansas, *id.* at 18.

To begin, plaintiff asserts that "it is common knowledge that both Kansas State and Federal Courts have far less litigation than California Federal Courts and thus will be less congested." *Id.* at 16. Plaintiff never cites any authority to support this assertion. *See id.* And he never identifies any "administrative difficulties flowing from" this alleged court congestion. *Tallgrass Talent Grp.*, 2017 WL 4123304, at *3 (quotation cleaned up). At defendants' request, the court takes judicial notice of the Federal Court Management Statistics they cite in reply.[4] Doc. 21 at 9 n.6; *see* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (December 31, 2025), https://www.uscourts.gov/data-news/data-tables/2025/12/31/federal-court-management-statistics/n-a-1. These statistics demonstrate that, as of last year, the Central District of California has a shorter civil filing-to-disposition rate than that of the District of Kansas. *Compare id.* at 68 (Central District of California at 3.8 months), *with id.* at 80 (District of Kansas at 7.1 months). Additionally, while the District of Kansas has a shorter filing-to-trial rate, it is only marginally shorter. *Compare id.* at 68 (Central District of California at 25.5 months), *with id.* at 80 (District of Kansas at 22.9 months). In light of these statistics—and plaintiff's conclusory assertion offering no contrary support—plaintiff's argument fails. The court is not convinced that court-congestion concerns require our court to retain this case.

---

[4] A district court may take judicial notice of information available on the internet that is sufficiently reliable and readily available. *See Marten Transp., LTD v. Platform Advert., Inc.*, 2016 WL 1718862, at *4 (D. Kan. 2016) (explaining that Tenth Circuit has "sanctioned taking judicial notice of factual information on the internet").

Plaintiff's second argument is similarly unpersuasive. Plaintiff contends that the KCPA, and Kansas state court opinions about it, prohibit enforcement of forum-selection clauses. Doc. 17 at 16–19. As this court concluded in *Wyldewood Cellars, Inc. v. Torro, LLC*, "enforcing a forum selection clause [doesn't] violate the KCPA because plaintiff [can] bring his KCPA claims in another jurisdiction." 2023 WL 3750582, at *6 (D. Kan. June 1, 2023) (citing *Billings, M.D. v. Clinitec Int'l, Inc.*, 2000 WL 1072167, at *3 (D. Kan. July 25, 2000)). Plaintiff cites a decision by the Kansas Court of Appeals, which found a forum-selection clause unenforceable under the KCPA. Doc. 17 at 16–17 (citing *Kan. City Grill Cleaners, LLC v. BBQ Cleaner LLC*, 454 P.3d 608, 612 (Kan. Ct. App. 2019)). But *Wyldewood* wrestled with this very decision and explained that "our court has rejected this argument multiple times." *Id.* (first citing *Billings*, 2000 WL 1072167, at *3; and then citing *Streit v. Snap-On Equip. Inc.*, 2010 WL 5058540, at *4 (D. Kan. Dec. 6, 2010)).

Undeterred, plaintiff posits two other avenues to avoid *Wyldewood*'s conclusion. Plaintiff argues, *first*, that the "*Wyldewood* holding and interpretation is contrary to the holding by the Kansas Court of Appeals." Doc. 17 at 17. But this Order already has determined that the enforceability of a forum-selection clause is a procedural question, subject to federal—not state—law. *Herr Indus., Inc. v. CTI Sys., SA*, 112 F. Supp. 3d 1174, 1178 (D. Kan. 2015) ("The overwhelming majority of circuit courts consider the enforceability of forum selection clauses under federal law in diversity cases, based on the conclusion that venue presents a question of procedure for purposes of the *Erie* doctrine."). Indeed, the Supreme Court in *Stewart Organization* decided that—a state law's unfavorable stance toward forum-selection clauses notwithstanding—"federal law . . . governs the District Court's decision whether to give effect to

the parties' forum-selection clause and transfer [a] case[.]" 487 U.S. at 32. So, *Kansas City Grill Cleaners* is of no moment here.

*Second*, plaintiff contends that *Wyldewood* is distinguishable because it "does not involve an adhesion contract[.]" Doc. 17 at 16. But plaintiff never explains why this adhesion-contract distinction matters. *See id.* And the court won't manufacture plaintiff's arguments for him. *See Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (refusing to "construct an argument" for a party). Regardless, the court already has explained why plaintiff's generic adhesion arguments—which attack the contract as a whole and not the forum-selection clause in particular—can't move the needle.

Plaintiff's final attempt to avoid the clause's enforcement fares no better. Plaintiff asserts that a transfer would strip him "of the injunctive relief [he] has pled and is entitled to[.]" Doc. 17 at 19. Plaintiff purports to seek an injunction "for the benefit of the general public." *Id.* at 18. But transfer will not deprive plaintiff of access to any avenue of relief. Upon transferring an action under § 1404(a), the "transferee court's powers are coextensive with those of the transferor court; it may issue any order or render any judgment that could have been made in the transferor court had the transfer never taken place." *Chrysler*, 928 F.2d at 1516.

In sum, the court concludes that plaintiff has not met his burden of showing that the public-interest factors overwhelmingly disfavor a transfer.

## IV. Plaintiff's Motion for Leave to File Sur-Reply (Doc. 22)

Plaintiff asks this court to grant him leave to file a sur-reply. Doc. 22. But plaintiff failed to attach the proposed sur-reply to his motion because, according to him, "time was of the essence." Doc. 24 at 1. Defendants oppose the motion. Doc. 23.

"Our court's local rules limit briefing on motions to the motion (with memorandum in support), a response, and a reply." *Hampton v. Barclays Bank Del.*, 478 F. Supp. 3d 1113, 1142

(D. Kan. 2020) (citing D. Kan. Rule 7.1(a), (c)), *aff'd*, 2021 WL 3237082 (10th Cir. July 30, 2021). Sur-replies typically aren't allowed. *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004), *aff'd*, 189 F. App'x 752 (10th Cir. 2006). Our local rules require parties seeking leave to file a "document that may not be filed as a matter of right" to attach the proposed filing to their motion. D. Kan. Rule 15.1(a)(2). Plaintiff concedes he's failed to abide this rule. Doc. 24 at 1. So, the court denies his request to file an additional brief. *See, e.g.*, *Barnwell v. Corr. Corp. of Am.*, 2008 WL 4809887, at *2 (D. Kan. Oct. 31, 2008) (denying leave to file sur-reply for failure to comply with D. Kan. Rule 15.1); *Assessment Techs. Institute, LLC v. Parkes*, 2021 WL 4860553, at *4 (D. Kan. Oct. 19, 2021) ("Defendant failed to attach her proposed sur-reply to the motion for leave, and the motion can be denied on this basis alone.").

The court now turns to plaintiff's final request—this one for Rule 11 sanctions—next.

## V. Plaintiff's Request for Sanctions

In his Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion for Leave to File a Sur-reply (Doc. 24), plaintiff requests sanctions against defendants' counsel under Fed. R. Civ. P. 11. To support this request, plaintiff asserts that defendants' counsel has repeatedly "intentionally or negligently misled this Court as to the case law they cite." Doc. 24 at 5.

Whether to impose Rule 11 sanctions is committed to the court's discretion. *Collins v. Daniels*, 916 F.3d 1302, 1319 (10th Cir. 2019). "Rule 11 imposes an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Id.* at 1320 (quotation cleaned up). The court assesses attorney conduct "under a standard of objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document." *Id.* (quotation cleaned up). "A motion for sanctions must be made separately from any other motion[.]" Fed. R. Civ. P. 11(c)(2). If a court determines that Rule 11 has been violated, it "may

impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

As an initial—and ultimately dispositive—matter, plaintiff again has failed to comply with procedural rules. Rule 11 requires a party to file a motion for sanctions "separately." Fed. R. Civ. P. 11(c)(2). This rule "provides that requests for sanctions must be made as a separate motion, *i.e.*, not simply included as an additional prayer for relief contained in another motion." Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendment. As our court has explained, "failure to comply with these procedural requirements precludes an award of Rule 11 sanctions, and might even justify Rule 11 sanctions against [the moving party]." *Berg v. Frobish*, 2015 WL 8966960, at *1 (D. Kan. Dec. 15, 2015). Plaintiff embedded his request for Rule 11 sanctions in a reply brief—he didn't file a separate motion. This procedural shortcoming independently dooms the request for Rule 11 sanctions. *Id.*

But even reaching the merits, the court concludes that sanctions aren't warranted. Plaintiff's request stretches "misrepresentation" beyond its ordinary reach. After a careful review of defendants' Memorandum in Opposition (Doc. 23), the court detects no sanctionable citations or arguments made by defendants. Plaintiff is correct that several of the cited cases involve distinguishable contexts to the case at hand. But each statement of law is accurate. And defendants didn't commit sanctionable misconduct by trying to apply those cases beyond their specific contexts.

For example, plaintiff takes issue with defendants' use of *Taylor v. Sebelius* to support the proposition that sur-replies are typically not allowed in this district. Doc. 24 at 4 (citing 350 F. Supp. 2d at 900). Undoubtedly, the case involves a situation different than the one at hand. In *Taylor*, a pro se litigant filed a sur-reply without requesting leave of the court. By contrast, here,

plaintiff has requested leave. In plaintiff's view, this difference means that *Taylor* holds "no relevance as to Plaintiff's request for leave before this Court." Doc. 24 at 4. But this district typically doesn't allow sur-replies—even when a party requests leave. *See, e.g.*, *Metzger v. City of Leawood*, 144 F. Supp. 2d 1225, 1266 (D. Kan. 2001) ("Under D. Kan. Rule 7.1, sur-replies are not ordinarily allowed by the Court."). So, plaintiff's identified distinction—whether a party requests leave—is immaterial to the broader proposition that sur-replies are rare. Plaintiff's other purported examples of misconduct similarly do not fall below the objective standard of reasonableness adopted by Rule 11. So, the court denies plaintiff's request for sanctions on procedural and substantive grounds.

## VI. Conclusion

Plaintiff agreed to a valid, mandatory, and enforceable forum-selection clause. That clause sets the proper forum for this case in California. Under 28 U.S.C. § 1404(a), the court thus grants defendants' transfer motion and transfers this case to the United States District Court for the Central District of California. Defendants' merits arguments are ones for the transferee court to consider. So, the court declines to reach defendants' 12(b)(6) motion and dismisses it for lack of jurisdiction. Finally, the court denies plaintiff's sur-reply and sanctions motions.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Ubisoft Entertainment SA and Ubisoft, Inc.'s Motion to Transfer, or Alternatively, Motion to Dismiss (Doc. 11) is granted in part and dismissed in part. The court grants the motion to transfer and transfers this action to the United States District Court for the Central District of California. The court directs the Clerk of the Court to take all necessary steps to effectuate this transfer. The court dismisses defendants' Motion to Dismiss for lack of jurisdiction.

**IT IS FURTHER ORDERED THAT** plaintiff Jacob Himberger's Motion to File a Sur-Reply (Doc. 22) and embedded request for sanctions are denied.

**IT IS SO ORDERED.**

**Dated this 26th day of August, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree______**
**Daniel D. Crabtree**
**United States District Judge**